UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TORYONA JACKSON,
*o/b/o M.R., a minor*

      Plaintiff,                      Civil Action No. 19-12654

v.

                                    HON. R. STEVEN WHALEN

COMMISSIONER OF SOCIAL       U.S. Magistrate Judge
SECURITY,

      Defendant.
_____/

**OPINION AND ORDER**

Plaintiff Toryona Jackson ("Plaintiff") brings this action under 42 U.S.C. §405(g) on behalf of her minor child ("M.R.") challenging a final decision of Defendant Commissioner ("Defendant") denying child disability benefits under Title XVI of the Social Security Act. On December 17, 2019, both parties consented to United States Magistrate Judge jurisdiction under 28 U.S.C. § 636( c ) and Fed. R. Civ. P. 73. Both parties filed summary judgment motions. For the reasons set forth below, Defendant's Motion for Summary Judgment [Docket #13] is GRANTED and Plaintiff's Motion for Summary Judgment [Docket #12] is DENIED.

# I.  PROCEDURAL HISTORY

On October 28, 2016, Plaintiff applied for child disability benefits on behalf of M.R., alleging disability as of June 15, 2013.  (ECF No. 9, PageID.164)(Tr. 139).[1]  After the initial denial of benefits, Plaintiff requested an administrative hearing, held on May 17, 2018 (Tr. 31).  Administrative Law Judge ("ALJ") Crystal L. White-Simmons presided. Plaintiff, represented by Salina L. Choice, testified (Tr. 34-54).   On August 31, 2018, ALJ  White-Simmons found that M.R. was not disabled (Tr. 14-26).  On August 15, 2019, the Appeals Council denied review (Tr. 1-3).  Plaintiff filed for judicial review of the final decision on September 10, 2019.

# II.  BACKGROUND FACTS

M.R., born December 11, 2006, was 11 at the time of the ALJ's determination (Tr. 26, 139).  Plaintiff alleges that M.R. is disabled due to Attention Deficit Hyperactivity Disorder ("ADHD"), acting out, and problems in reading and calculations (Tr. 146).

## A.  Plaintiff's Testimony

Plaintiff offered the following testimony on behalf of M.R.:

M.R. lived in a single family home with Plaintiff, two sisters, uncle, and  grandmother (Tr. 35).  He was in fourth grade (Tr. 36).  He weighed 32 pounds at the time of the hearing (Tr. 35).  He repeated first and second grades (Tr. 36).  His academic problems were mostly

---

[1]Citations to the administrative record (ECF. No. 9) are henceforth referred to by transcript page number.

attributable to ADHD (Tr. 36-37).  M.R. was prone to verbal and physical altercations (Tr. 37).  He was receiving mental health counseling (Tr. 37).  He also saw a physician once every six months (Tr. 38).  He took medication to help him sleep at night (Tr. 38).  He used an inhaler twice a day for the condition of asthma, but had not had an asthma attack since 2013 (Tr. 37-38).

M.R. required reminders to get up in the morning (Tr. 39-40).  He needed help showering and washing his face thoroughly (Tr. 40).  Plaintiff laid out M.R.'s clothes for him every morning but he was able to dress himself (Tr. 40).  He had a "temper tantrum" if his clothes were not laid out for him (Tr. 41).  He was able to take out the trash (Tr. 42).  He was able to play football and basketball and did not have significant physical problems (Tr. 43). He was on soccer and football team (Tr. 50-51).  He enjoyed video games (Tr. 51).

M.R. was taking "special needs" classes which included individual time with a teacher to help him with difficulties in reading, writing, and math (Tr. 43-44).   He "shut down" when given challenging reading assignments (Tr. 45). He did not have hearing problems (Tr. 46).   Family members had difficulty interacting with him (Tr. 46).   When M.R. was frustrated, he might throw a chair or break a window (Tr. 46).  At school, he would push other students or walk out of class (Tr. 46).  He had friends in the neighborhood and at school (Tr. 46-47).  After altercations with his friends, he would typically sulk for a couple of days (Tr. 47).  At times he would respond to "rules and directions" (Tr. 47).  Plaintiff believed that M.R. became angry when confronted with information he did not understand (Tr. 47).  M.R.

had an attention span of five minutes (Tr. 47-48).  He was not able to read (Tr. 48).  He finished his homework assignments with the help of Plaintiff (Tr. 48).  He was still learning to write his name (Tr. 48).

In response to questioning by counsel, Plaintiff testified that she disciplined M.R. for temper tantrums by taking away his phone and forbidding video games (Tr. 53).  M.R. had a temper tantrum at school  two months before the hearing and had his most recent physical fight at school a year earlier (Tr. 54).  Although M.R. was in fourth grade, his reading level had been assessed at the second grade level (Tr. 54).

**B.      Medical and Academic Evidence**

### 1.  Treating and Academic Sources

March, 2015 academic testing showed that M.R.'s language skills ranged between "normal" and two standard deviations below the mean for his age (Tr. 730-731).  April, 2015 records note that M.R.'s IQ was in the "low average" range (Tr. 694-695).  January, 2016 counseling records note Plaintiff's report that M.R. was easily frustrated (Tr. 241).  Individual and family therapy was recommended (Tr. 320).  Summer, 2016 records state that M.R. enjoyed spending time with his father and was looking forward to the new school year (Tr. 413). He appeared fully oriented (Tr. 529).  M.R. continued to struggle with reading and math and had "anger issues" with his sister (Tr. 532).

In November, 2016, Plaintiff reported oppositional behavior, poor grades, difficulty

with authority, and concentrational problems (Tr. 297, 357).  Plaintiff deemed M.R.'s physical health "good" (Tr. 298).  She noted that M.R. cried when frustrated and had been suspended for fighting at school in past school years (Tr. 314).  M.R.'s behavioral and learning problems were deemed "moderate" (Tr. 369).  Plaintiff noted that recent situational stressors included a cousin's murder (Tr. 363).  M.R. was diagnosed with ADHD (Tr. 536).

IQ testing from the same month ranged from average to "very low" in auditory processing (Tr. 701).  In December, 2016, M.R. was deemed eligible for an Individualized Educational Program ("IEP") based on deficiencies in reading skills and comprehension, written expression, and math (Tr. 681-683).  His reading skills were placed at the first-grade level (Tr. 685).

In January, 2017, Lynese Davis, special education teacher, found "obvious" but not "serious" or "very serious" limitations in the domains of "Acquiring and Using Information"; "Attending and Completing Tasks;" and  "Interacting and Relating to Others" (Tr. 163-165). She found no limitation in "Moving About and Manipulating Objects;" "Caring for Yourself;" or "Health and Physical Well-Being" (Tr. 166-168).  Ms. Davis' May, 2017 assessment showed similar results (Tr. 174-179).

May, 2017 records state that M.R. enjoyed math, but needed help with school work (Tr. 539).  A medication review from the next month noted no recent major behavioral issues (Tr. 631).  November, 2017 counseling records note normal speech, full orientation, good eye contact, and a normal thought process (Tr. 538, 623).  Records from the same month note

that M.R. was disruptive and had received his first detention of the school year for fighting with another student (Tr. 622). January, 2018 records note that M.R. had "received several detention[s]" for failing to complete class work (Tr. 616, 619). May, 2018 records note "no current behavioral issues" at school (Tr. 613). M.R. appeared alert and oriented (Tr. 614).

## 2.  Non-Treating Sources

In February 21, 2017, psychiatrist Ibrahim Youssef, M.D. performed a consultative examination, noting Plaintiff's report that M.R. was hyperactive, impulsive, and oppositional (Tr. 231). Plaintiff reported improvements with psychotropic medication (Tr. 231). Plaintiff reported that M.R. had not been suspended during the current school year and was able to learn (within the special education program) "within normal limits" (Tr. 231). Dr. Youssef noted that M.R. fidgeted but remained seated with an appropriate attitude (Tr. 232). He exhibited normal speech and a normal affect and mood (Tr. 232). Dr. Youssef noted that M.R. did "not seem to have severe behavioral problems" (Tr. 232). He gave M.R. a guarded prognosis (Tr. 233).

In April, 2017, Lea Ann Raymo, Ph.D. administered the Wechsler Intelligence Scale for Children, Fifth Edition (Tr. 236). M.R.'s full scale IQ was 70; verbal, 65; visual, 92; working memory, 79; and processing speed, 86 (Tr. 236). She diagnosed M.R. with ADHD, combined type, and borderline intellectual functioning (Tr. 237). She gave M.R. a guarded prognosis, noting moderate impairment in the ability to understand, retain, and follow instructions; perform basic tasks; and interacting with others (Tr. 237).

In May, 2017, Rose Moten, Ph.D. performed a non-examining review of the treating and consultative records, finding "less than marked limitation;" in the domains of "Acquiring and Using Information;" "Attending and Completing Tasks;" and "Interacting and Relating to Others" (Tr. 62-63). Dr. Moten found no limitation in the domains of "Moving About and Manipulating Objects;" "Caring for Yourself;" or "Health and Physical Well-Being" (Tr. 63). She noted that a January, 2017 teacher's report showed improvement in M.R.'s behavioral issues (Tr. 60).

### C.  The ALJ's Decision

Citing the medical and academic records, ALJ White-Simmons found that for the relevant period, M.R. experienced the severe impairments of ADHD borderline intellectual functioning, and asthma but that none of the conditions met or medically equaled any listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1(Tr. 17-18).

The ALJ found that in the domain of "Acquiring and Using Information," M.R. had "less than marked limitation" (Tr. 20-21). In the domain of "Attending and Completing Tasks," the ALJ again found less than marked limitation, citing Ms. Davis' finding of no severe or very severe limitations in that domain (Tr. 22). She noted that the condition of ADHD was stable with medication (Tr. 22).

In the domain of "Interacting and Relating to Others," the ALJ found that M.R. had less than marked limitation, noting that he was cooperative during evaluations and that he had not received scores of severe or very severe problems in that domain (Tr. 23). The ALJ

found no limitation in the domain of "Moving About and Manipulating Objects," noting that M.R. was able to perform chores and engage in team sports (Tr. 24). The ALJ found "less than marked limitation" in "Caring for Yourself," noting that while M.R. needed assistance showering, his teacher had found no limitation in that domain (Tr. 25). The ALJ cited psychological evaluations noting good hygiene (Tr. 25).

Finally, the ALJ found "less than marked" limitations in the domain of "Health and Physical Well-Being," observing that while M.R. used an inhaler for the condition of asthma, he was able to play football and basketball and had "hit his developmental milestones" (Tr. 25). She also noted that M.R.'s teacher found no limitation in that domain (Tr. 25).

### III.  STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted). The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. *Biestek* at 139 S. Ct. at1152; 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Commissioner of Social Sec.*,

486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*). Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)).     However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.  FRAMEWORK FOR CHILD DISABILITY BENEFITS

42 U.S.C. § 1382c (a)(3)(C)(I) provides that "[a]n individual under the age of 18 shall be considered disabled" if he or she "has a medically determinable physical or mental impairment which results in marked and severe functional limitations."[2]   In evaluating

---

[2]Childhood claims are subject to the same 12-month durational requirement as adult claims. 42 U.S.C. § 1382c (a)(3)(C)(I)

whether a child is disabled, the Commissioner is to consider, in sequence, whether the child claimant 1) is "doing substantial gainful activity" 2) has a severe impairment, and if so 3) has "an impairment(s) that meets, medically equals, or functionally equals the listings." 20 C.F.R. § 416.924(a). If the claimant does not meet or medically equal a listed impairment, the Commissioner proceeds to determine functional ability in six domains to determine whether the child functionally equals the listings:

> (I) Acquiring and using information;
>
> (ii) Attending and completing tasks;
>
> (iii) Interacting and relating with others;
>
> (iv) Moving about and manipulating objects;
>
> (v) Caring for yourself; and,
>
> (vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1).

To establish disability at the third step, "the impairment(s) must . . . result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Id.* A "marked" limitation is defined as an impairment(s) that "interferes seriously with the ability "to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation "interferes *very* seriously" with the ability "to independently initiate, sustain, or complete activities"(emphasis added). 20 C.F.R. §

416.926a(e)(3).

# V.  ANALYSIS

In her sole argument for remand, Plaintiff contends that the transcript supports the finding that M.R. meets, medically equals, or functionally equals Listing 112.05 (Intellectual Disorder).(ECF No. 12, PageID.772.)(*citing* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.05))(effective March 27, 2017).

Listing 112.05 provides as follows:

Intellectual disorder (see 112.00B4), for children age 3 to attainment of age 18, satisfied by A or B:

A. Satisfied by 1 and 2 (see 112.00H):

1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and,

2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing) in excess of age-appropriate dependence.

OR

B. Satisfied by 1 and 2 (see 112.00H):

1. Significantly subaverage general intellectual functioning evidenced by a or b:

a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general

intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

a. Understand, remember, or apply information (see 112.00E1); or

b. Interact with others (see 112.00E2); or

c. Concentrate, persist, or maintain pace (see 112.00E3); or

d. Adapt or manage oneself (see 112.00E4).

Plaintiff argues that M.R. meets Listing 112.05 because he has a full scale IQ of 70 and experiences marked limitation in all four areas of mental functioning (ECF No. 12, PageID.772.).  She appears to contend that the ALJ gave short shrift to the issue of whether M.R. actually met Listing 112.05.

As a threshold matter, Plaintiff's argument that the ALJ erred by not providing an extended discussion regarding the four areas of mental functioning listed in Listing 112.05B2(a-d) does not provide grounds for remand.  First, the ALJ cited Listing 112.05 in making her Step Three analysis (Tr. 17).  While she appears to have overlooked M.R.'s full scale IQ of 70 at this point in her findings, she found that M.R. did not experience marked limitation of two categories of mental functioning or extreme limitation in one[3] (Tr. 17).  The full scale IQ of 70, unaccompanied by a finding of two marked or one extreme limitation in mental functioning, does not establish that M.R. met Listing 112.05.

---

[3]The ALJ later acknowledged the full scale IQ of 70 (Tr. 20).

Second, the ALJ went on to provide a thorough rationale for finding that M.R. did not experience even one marked limitation in any of the six domains to be considered in child disability cases. *See* § 416.926a(b)(1)*.* I agree with Defendant's contention that a prolonged discussion of why M.R. did not experience marked or extreme limitation in any of the four areas of mental functioning set forth in Listing 112.05 would be redundant given their "obvious parallels between the functional equivalence domains." (ECF No. 13, PageID.799.)(*quoting Griffin v. Colvin*, 2016 WL 910506, at *5 (N.D. Ill. Mar. 10, 2016))("'Considering that the ALJ's summary of the record, explanation of the weight of the evidence, and analysis of the six domains is applicable to all three listed impairments addressed by the ALJ, the Court applies the ALJ's discussion of these issues to its Listing 112.05 inquiry.'"); *Scarborough o/b/o J.J.S. v. Saul*, No. 18-516-B, 2019 WL 5839298, at *8-11 (S.D. Ala. Nov. 7, 2019) ("'Plaintiff's precise claim on appeal is that the ALJ erred in finding that J.J.S. has less than marked limitations in the areas of understanding, remembering, or applying information and concentrating, persisting, or maintaining pace, and, therefore, did not meet Listing 112.05(B). However, as noted, the ALJ found that because J.J.S.'s impairments caused no marked or extreme limitations in the non-physical childhood *functional domains*, they necessarily could not have caused two marked limitations or one extreme limitation in the *areas of mental functioning* listed in Paragraph 2 of Listing 112.05(B).'")(emphasis in original, internal punctuation omitted).

In support of Plaintiff's substantive argument that M.R. experienced marked

informational-related limitation, she cites records showing academic difficulties, problems interacting with authority, and attention and memory problems. *Id.* As to interacting with others, she notes that M.R. is argumentative, disobeys rules, fights at school, and has a history of suspensions from school. *Id.* at 773. In regard to concentrational problems, she cites M.R.'s ADHD diagnosis. *Id.* at 774. She contends that M.R.'s adaptive problems are evidenced by his "difficulty managing his feelings and . . . outbursts." *Id.*

However, substantial evidence supports the conclusion that M.R. did not experience marked or extreme limitation in any of the four areas of mental functioning set forth in Listing 12.05. Standing alone Ms. Davis' finding that M.R. did not experience any serious or very serious *i.e.* marked or extreme limitation in any category or subcategory of functioning constitutes substantial evidence in support of non-disability (Tr. 163-173, 174-183). Plaintiff's contention that Ms. Davis, a special education teacher, did not fully understand the five-point scale used to quantify child functioning is wholly speculative. Ms. Davis' assessments are consistent with counseling records stating that M.R.'s behavioral and learning problems were "moderate" (Tr. 369).

The consultative findings also support the finding that M.R. did not experience marked or extreme limitation. Dr. Youseff noted that M.R. fidgeted but remained seated with an appropriate attitude; exhibited normal speech with a normal affect and mood; and did "not seem to have severe behavioral problems" (Tr. 232). Plaintiff acknowledged that M.R. had not been suspended during the most recent school year (Tr. 231). After administering

-14-

cognitive testing, Dr. Raymo concluded that M.R. experienced no more than moderate impairment in the ability to understand, retain, and follow instructions; perform basic tasks; and interacting with others despite diagnoses of ADHD and borderline intellectual functioning (Tr. 237). Dr. Moten likewise concluded that M.R. did not experience marked or extreme limitation in any of the childhood domains (Tr. 62-63).

Contrary to Plaintiff's argument that the ALJ did not consider the evidence supporting a disability, the ALJ discussed Plaintiff's testimony and the records showing that M.R. experienced some degree of limitation (Tr. 19-25). She noted Plaintiff's report that M.R. became easily frustrated and resorted to "crying, yelling, stomping, and talking back," but that his symptoms improved with counseling (Tr. 19). She acknowledged Ms. Davis' finding that M.R had been suspended from school for three days for fighting  the diagnoses of a learning disability and ADHD (Tr. 20-22). Notwithstanding, substantial evidence discussed at length by the ALJ supports the conclusion that M.R. was not disabled. Because her findings are well supported and explained, a remand for either an award of benefits or further fact-finding is not warranted.

In closing, my recommendation to uphold the administrative findings should not be read to trivialize M.R.'s limitations resulting from ADHD and a learning disability. The record also shows that Plaintiff has been more than diligent in her quest for efficacious treatment for her minor son. Nonetheless, because the ALJ's determination was within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not

be disturbed by this Court.  *Mullen v. Bowen, supra*.

## **<u>CONCLUSION</u>**

For the reasons stated above, Defendant's Motion for Summary Judgment [Docket #13] is GRANTED and Plaintiff's Motion for Summary Judgment [Docket #12] is DENIED.

s/R. Steven Whalen                         
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE


Dated:  March 25, 2021

-16-